UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| **FF COSMETICS FL INC**, <br> a Florida corporation, doing business as <br> Forever Flawless Cosmetics 1, <br> **TIMELESS COSMETICS FL INC,** <br> a Florida corporation, and <br> **BRILLIANCE NEW YORK, LLC**, <br> a New York limited liability company, <br> f/k/a/ Brilliance New York, Inc., <br><br>     Plaintiffs, <br><br> vs. <br><br> **CITY OF MIAMI BEACH, FLORIDA**, <br> a Florida municipal corporation, <br><br>     Defendant. | CASE NO.: |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs, FF COSMETICS FL INC, TIMELESS COSMETICS FL INC, and BRILLIANCE NEW YORK, LLC, file this Complaint against the CITY OF MIAMI BEACH, pursuant to 42 U.S.C. §1983, seeking a judgment declaring certain ordinances, policies and practices of the Defendant to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Plaintiffs further pray for an award of damages for the losses occasioned by the unconstitutional application of the City's law against the Plaintiffs.

### JURISDICTION

1.      This suit is brought pursuant to 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.       This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.       The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.       The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

5.       This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiffs' rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

6.       This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain Ordinances and policies of the Defendant. There are

substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's actions taken under color and authority of "state" law and procedures, in violation of Plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

7.      Venue is proper in the Southern District of Florida, Miami Division, since the laws and policies complained of are those of Miami Beach, Florida, which is within the district and geographical area assigned to the Miami Division.

## PARTIES

8.      Plaintiff, FF COSMETICS FL INC., is a Florida corporation doing business as "Forever Flawless Cosmetics 1" at 704 Lincoln Road, Miami Beach, Florida. Plaintiff is an entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

9.      Plaintiff, TIMELESS COSMETICS FL INC, is a Florida corporation doing business at 947 Lincoln Road, Miami Beach, Florida. Plaintiff is an entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

10.      Plaintiff, BRILLIANCE NEW YORK, LLC is a New York corporation registered to do business in the State of Florida, which does business under the trade name "Brilliance New York", at 631 Lincoln Road, Miami Beach, Florida. Plaintiff is an entity beneficially interested in the relief herein sought and seeks to invoke the original jurisdiction of this Court on account of the facts and matters herein stated.

11.     Defendant, CITY OF MIAMI BEACH, ("Miami") is a Florida municipal corporation, organized and operating under the laws of the State of Florida.

## COLOR OF STATE LAW

12.     As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, the CITY OF MIAMI BEACH and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject Zoning Ordinance. The enforcement and threatened enforcement of the subject Ordinance against Plaintiffs is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

13.     The ordinances, actions and policies of Defendant Miami have deprived and will continue to deprive Plaintiffs and its patrons of rights guaranteed and protected by the First and Fourteenth Amendments to the United States Constitution.

## PLAINTIFFS' BUSINESS AND SPEECH ACTIVITIES

14.     Each of the Plaintiffs leases property along the Lincoln Road Mall within the municipal boundaries of the CITY OF MIAMI BEACH, Miami-Dade County, Florida. Lincoln Road Mall is a commercial and entertainment district, closed to vehicular traffic, which offers a variety of restaurants and retail stores in a pedestrian-friendly setting not commonly found in downtown urban areas.

15.     Each of the Plaintiffs is properly zoned for retail sales at their present locations and each Plaintiffs holds all requisite licenses to do business as it is currently conducted in each store.

16.     Plaintiffs each operate similar retail cosmetics offering lines of beauty products not available in chain stores or via the Internet. Each of the Plaintiffs offers a

different line of cosmetics, but each is similar in that they are extremely high-end products marketed to a largely affluent clientele.

17.     Plaintiffs rely on personal, face-to-face communications with their patrons and potential patrons to market their cosmetics to a much greater extent than a more conventional retail establishment marketing more conventional lines of cosmetics.

18.     Those personal face-to-face communications take place on the public sidewalks outside and nearby the Plaintiffs' stores, all of which are public forums.

19.     Other forms of communication – including signs and print ads, radio and television - are noticeably less effective in reaching Plaintiffs' target customers. Plaintiffs' customers are more likely to make purchases after an educational session with Plaintiffs' sales staff and are not likely to be attracted to the stores by traditional advertising. In addition, Plaintiffs' products are relatively new in the market and face-to-face advertising represents the best opportunity to spread information regarding their products generally.

20.     While Plaintiffs from time to time hand out samples or leaflets promoting their products to passerby, the majority of their communications with patrons and potential patrons are simply unamplified person-to-person oral communications, i.e. "pure speech".

21.     Plaintiffs' employees and contractors do not make use of signage, card tables, kiosks or any other physical object which might block or impede pedestrian traffic.

22.     While Plaintiffs encourage their sales staff to directly engage passerby in conversation, Plaintiffs' employees and contractors do not physically impede pedestrians as they pass by on the pedestrian mall. Neither do Plaintiffs berate or intimidate passersby or follow or chase after them. Plaintiffs' employees and contractors remain in the

immediate vicinity of their respective stores and do not roam indiscriminately about the Lincoln Road Mall.

23.     While some of Plaintiffs' patrons specifically go to the Lincoln Road Mall to patronize their stores, most of their patrons are enticed into the stores because sales staff communicate with pedestrians as they walk by. That is to say, the majority of Plaintiffs' patrons are pedestrians and most of those pedestrians would not become customers, or would not be returning customers, but for Plaintiffs' ability to communicate to them as they pass by on the pedestrian mall.

24.     Plaintiffs' interactions with their patrons and potential patrons are not merely for the purpose of making immediate sales of goods. Rather, their personal, face to face communications are intended to be educational and to disseminate information about personal grooming, beauty tips and skin care which are of value to passersby whether or not they buy a product from the Plaintiffs. Thus, Plaintiffs' speech includes both a commercial and non-commercial component.

25.     Plaintiffs' speech is truthful and not misleading.

26.     Plaintiffs' speech – including both the commercial and non-commercial components – is protected by the First Amendment as applied to the States through the Fourteenth Amendment.

## THE MIAMI BEACH SOLICITATION ORDINANCES

27.     The City purports to govern solicitation of patrons through two ordinances: (1) Section 74-1 "Soliciting business in public from pedestrians" and (2) Section 46-92 "Litter; definitions; prohibitions on litter; penalties for litter and commercial handbill violations; commercial handbill regulations, fines, and rebuttable presumptions; seizure and removal of litter by the city; enforcement; appeals; liens."

28.     The provisions of §74-1 relevant to communications with pedestrians read

as follows:

(a)     Prohibitions. It shall be unlawful for any person, while upon any
public street or sidewalk or while in any building, doorway, stairway,
window or other opening abutting on or adjacent to such street or
sidewalk, to accost or attempt to accost any pedestrian on such street or
sidewalk for the purpose of soliciting him to purchase any property, real or
personal, or any food, beverage or service, or to solicit him to enter any
place of business for the purpose of selling to or inducing or attempting to
induce such pedestrian to purchase any property, real or personal, or any
food, beverage or service.

A copy of the full text of §74-1 is attached as Exhibit "A" to this Complaint.

29.     The provisions of §46-92 relevant to communications with pedestrians

read as follows:

(g)     Prohibitions on commercial handbill distribution.

(1)     Definitions. The following words, terms and phrases, when
used in this section, shall have the meanings ascribed to them in this
subsection, except where the context clearly indicates a different meaning:

a.     Art deco historic district means that area within the
boundaries of the National Register Historic District (the Miami Beach
Architectural District) as set forth in appendix A.

b.     High impact periods mean those periods of time as
annually designated by the city manager during which one or more of the
following occur:

(i)     There is a designated major event period;

(ii)    A maintenance of traffic plan is required
(e.g., including, but not limited to, street closures, lane closures, shuttle
service);

(iii)   Hotel occupancy levels are anticipated to be
greater than 75 percent;

(iv)    Mutual aid or other assistance from outside agencies is required to provide for the safety and well-being of residents and visitors to the destination; and

(v)    An event on public property is anticipated to result in more than 25,000 visitors to the destination.

c.    Right-of-way means and includes, but is not limited to, any state, county, or city owned public street, sidewalk, street corner, curb, bicycle path, or pedestrian walkway.

(2)    Art deco historic district during high impact periods. Commercial handbills shall not be distributed in the art deco historic district during high impact periods on Ocean Drive from 6th through 15th Streets, Washington Avenue from 6th through 17th Streets, Collins Avenue from 6th through 17th Streets, and on any portion of Lincoln Road.

(3)    Sidewalk cafes. Commercial handbills shall not be distributed on the right-of-way:

a.    Within 20 feet in any direction from the outside perimeter of any approved sidewalk cafe (as indicated in the approved site plan attached to the city-issued permit); and

b.    On any right-of-way within the approved sidewalk cafe.

A copy of the full text of §46-92 is attached as Exhibit "B" to this Complaint.

30.    Section 46-92 incorporates a number of definitions which are crucial for a proper understanding of its reach and enforcement and are key to Plaintiffs' constitutional claims as well:

(a)    Definitions. The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:
….

(2)    Business means any commercial or industrial activity, entity, or event in or for which any goods or services are made, sold or offered for sale or other consideration, pecuniary or otherwise.

(3)     Handbill means any handbill, flyer, paper, document, dodger, circular, folder, booklet, letter, card, pamphlet, sheet, poster, sticker, banner, notice or other written, printed or painted matter or object that conveys any information, except that "handbill" shall not include a newspaper or its contents.

(4)     Commercial handbill means any handbill that conveys any information about any good or service provided by a business.

31.     The City has issued numerous citations to all of the Plaintiffs under the subject Ordinances, with most of the citations being issued for alleged violations of §74-1 [Two of the citations were issued for violation of §46-92: CE13006713 issued to FF Cosmetics and CE14007531 issued to Brilliance New York].

32.     On May 27, 2014, the City issued a written warning to each of the Plaintiffs threatening to revoke their occupational licenses for habitual violations of the City ordinances. The text of the warning reads as follows in each case:

Habitual conduct has occurred at the licensee's premises that violation city, county or state law:

 REF    Habituary (sic) violation City ordinances

Failure to correct this conduct immediately will result in a hearing before a Special Master to suspend or revoke your occupational license

Copies of the warnings given to the Plaintiffs are attached as Composite Exhibit "C" to this Complaint.

33.     The warning notices do not specifically reference §74-1 or §46-92. However, it is apparent that §74-1 and §46-92 are the ordinances which underlie the claim of habitual violation as the warning notices list the specific code citations upon which the City relies and all of those prior citations involve alleged violations of §74-1 or §46-92.

34.     Each of Plaintiffs have suffered damages in the past as a result of the enforcement of §74-1 and §46-92 as they have been compelled to pay fines for alleged violations of those ordinances.

35.     Each of the Plaintiffs now faces the loss of their occupational licenses and the consequent loss of their business as Plaintiffs cannot legally do business without an occupational license.

36.     If the Plaintiffs lose their occupational licenses, they will be unable to engage in speech related to their business and to the health and beauty needs of their customers and potential customers.

37.     Plaintiffs' speech rights have been chilled now, and in the future, as they will risk fines and the loss of their business if they ever again engage in the kind of speech to which the City objects; to-wit: personal, face-to-fact solicitation and communications with pedestrians.

## **CONSTITUTIONAL CLAIMS**

38.     Sections §74-1 and §46-92 are unconstitutional on their face and as applied against these Plaintiffs.

39.     The City objects to the content of Plaintiffs' speech. The City has utilized its Ordinances to stifle Plaintiffs' ability to advertise their products. The City has also utilized its ordinances to censor the non-commercial messages Plaintiffs seek to convey regarding personal grooming, beauty tips and skin care.

40.     The City objects to the manner in which Plaintiffs have selected to convey their commercial and non-commercial messages. In particular, the City expressly disfavors personal, face-to-face communications and leafletting near sidewalk cafes.

41.     Sections §74-1 and §46-92 are content-based in that they require a code enforcement officer to determine whether Plaintiffs' speech pertains to a particular business or to some good or service for sale. Violations of the ordinances are not dependent on conduct, but rather on what the speaker has to say. Only speech which pertains to some good or service is subject to a fine; speech about all other topics is not subject to a penalty. The following examples prove the point:

A.     Under §74-1 one of Plaintiff's employees or contractors could stand 500 feet away from the store and say to a passing pedestrian: "Beauty care products are great and protect you against skin cancer", thereby avoiding the penalties of the Ordinance because no sales transaction is proposed and there is no solicitation for any particular business. The same employee, in the same place, could say: "The beauty care products sold by that store over there are great and protect you against skin cancer" and immediately subject the Plaintiff to a fine and the eventual loss of its business license. The only difference is a subtle change in content which must be understood and analyzed by a code enforcement officer to tell whether or not the law has been violated.

B.     Under §74-1 an employee or contractor of one of the Plaintiffs could stand in front of a pedestrian, block his way, and shrilly shout in his face: "You ugly moron, you have the skin of an iguana. If you had a brain in your head, you would slather on as much beauty cream as possible in the vain hope that someday, someone will love you". That speech and conduct does not violate the Ordinance because the employee is not asking the pedestrian to purchase any product or to patronize any particular business. However, if the same employee stood in the doorway of Plaintiff's store and said to passersby, in a soft and pleasant voice: "This store has a great sale on beauty products, care to look?" that Plaintiff would be subject to fines and the eventual loss of its business

license. In that case, conduct is clearly not the triggering feature of the speech; rather it is the content of the speech which results in enforcement and fines.

C.      Under §46-92(g)(3), Plaintiffs' employees and contractors are free to walk up to persons patronizing local cafes and distribute handbills lionizing Adolf Hitler, featuring pornographic photographs, or listing their top ten favorite flavors of ice cream. However, those same employees cannot distribute handbills of the same size and color, to the same café patrons if the handbills "convey[]… information about … good[s] provided by a business". A code enforcement officer must read and analyze the handbill before he can determine whether the ordinance has been violated.

42.      A careful parsing of §74-1(a) shows that a portion of its language is arguably tied to conduct while the second part of the regulation prohibits pure speech with no accompanying conduct. The analysis is as follows:

A.       The words "to accost or attempt to accost" are active verbs which apply to the clause immediately following: "for the purpose of soliciting him to purchase any property, real or personal, or any food, beverage or service". The words "accost or attempt to accost" imply some form of physical conduct or an intention to engage in conduct.

B.      The ordinance continues with an additional clause linked by the disjunctive "or" and beginning with its own verb: "to solicit". The verb is followed by a description of the categories of things which might be solicited: "for the purpose of selling to or inducing or attempting to induce such pedestrian to purchase any property, real or personal, or any food, beverage or service." The verb "solicit" does not necessarily involve any form of conduct, but may be accomplished by mere oral communication or even a non-physical message.

C.      A plain reading of the Ordinance shows that the two clauses are to be construed and applied separately. That is the proper interpretation given the use of two separate verbs and the disjunctive word "or".

D.      Accordingly, "solicitation" of pedestrians for commercial purposes is prohibited whether or not the solicitation is accompanied by action which would lead a person to believe that he or she had been "accosted"

43.      As will be alleged with more particularity below, the language "to accost or attempt to accost" is not equivalent to aggressive panhandling or other expressive conduct which may be subject to reasonable time, place and manner restrictions. Rather, it is an overly broad standard, with no commonly accepted meaning, which has been applied by the City to a wide range of speech which was not accompanied by aggressive conduct.

44.      The ban on soliciting pedestrians to patronize a business or purchase a product or service amounts to a ban on pure speech. The Ordinance prohibits so much as a conversation initiated by a shopkeeper on his own doorstep. Flat bans on pure speech – even speech of a commercial nature – are seldom, if ever upheld, and are not constitutional under these circumstances or as applied to these Plaintiffs.

45.      Because the restrictions in §74-1 and §46-92 are based on the content of the speaker's communications, they cannot be sustained because the government does not have a compelling interest which would support a ban on such speech and the government has not chosen the least restrictive means of regulation.

46.      In the alternative, §74-1 and §46-92 cannot survive intermediate scrutiny because they are not supported by a substantial governmental interest, they do not further

any governmental interest and they are not narrowly tailored to advance the interest asserted.

47.    Sections 74-1 and §46-92 are not supported by a substantial governmental interest; the government has no legitimate interest in suppressing truthful, non-deceptive, non-coercive commercial speech. That interest is even more attenuated when applied to those components of Plaintiffs' speech which are non-commercial in nature (i.e. communications about personal grooming, beauty tips and skin care).

48.    Sections 74-1 and §46-92 do not further any purported governmental interest, or to the extent they do so, the burden on speech is excessively burdensome given the slight advancement of the governmental interest.

A.    <u>Plaintiffs allege the following particulars as to Section 74-1</u>:

(1)    The ordinance does not address any of the traditional basis for regulation such as noise or the free flow of pedestrian traffic. Speakers can be as loud as they want to be so long as they do not talk about business or products for sale. Likewise, the ordinance does not prohibit kiosks, tables or displays and is not limited to speakers who physically block the sidewalks.

(2)    The government may wrongfully claim that §74-1 only prohibits conduct in which a speaker "accosts" the listener. However, even if so, that does not apply to even the most aggressive political speaker, the most obnoxious charity or the ravings of a lunatic. *See*, paragraph 41-B. above. The focus on content belies any suggestion that the ordinance targets any particular conduct.

B.    <u>Plaintiffs allege the following particulars as to Section 46-92</u>:

(1)    The government cannot claim that its interest in preventing litter is advanced by the Ordinance since the prohibition in §46-92(g(3) extends for only a matter

of a few square feet around cafes and ignores the square miles in the rest of the City. Furthermore, there is nothing to prevent a leaflet distributed 21 feet away from a café to blow or be dropped to within 19 feet of a Café.

(2)     The government cannot claim that its interest in promoting peaceful mealtimes for patrons of cafes is advanced since speakers can distributed metric tons of handbills to those patrons so long as they do not "convey[]… information about … good[s] provided by a business".

49.     Sections 74-1 and §46-92 are overbroad because they reach a significant amount of speech which is not subject to prohibition, including truthful commercial speech presented in non-coercive circumstances as well as non-commercial speech enjoying the highest protection under the First Amendment.

A.     <u>Plaintiffs allege the following particulars as to Section 74-1</u>:

(1)     On its face, §74-1 prohibits *all* solicitation of pedestrians for any commercial purpose, including communications which are truthful, non-deceptive, and non-coercive. By way of example, ¶74(1) would prohibit a newsboy from selling newspapers to passersby on the corner for two reasons:

a.     The attempt to distribute the newspaper would itself constitute a solicitation for a commercial purposes; and

b.     Newspapers are typically full of advertisements for all manner of products for any number of specifically identified businesses.[1]

(2)     Section 74-1 is not limited in scope to certain parts of the City or to

---

[1]   The clear applicability of §74-1 to the distribution of newspapers to pedestrians stands in ironic contrast to §46-92(a)(3) which grants newspapers a unique exemption from the otherwise complete ban on leafletting.

certain times; rather it applies to *every* public street or sidewalk at *every* time and imposes a complete ban on personal solicitation of pedestrians.

(3)     The prohibition against solicitation in §74-1 applies specifically to public streets – the quintessential public forum where the government's ability to regulate speech is at its nadir.

(4)     The prohibition against solicitation in §74-1 is not confined to public property or the private property of non-consenting third parties. Section 74-1 prohibits speech from a citizen's own doorway, window or balcony if that speech could be overheard by a passing pedestrian on a public street. Presumably, §74-1 would apply to a citizen speaking behind the walls of a closed building if his speech could be heard on a public street or sidewalk.

(5)     The prohibition against solicitation in §74-1 is not limited only to direct solicitations for a commercial purpose. Rather it reaches any "attempt[] to induce such pedestrian to purchase any property, real or personal, or any food, beverage or service." A citizen would violate §74-1 if he ran into his best friend on the street and asked him to "buy him a drink at Haven Lounge".[2] Presumably a hot stock tip offered to your best buddy would also be out of the question.

(6)     Section 74-1 is not limited to "aggressive solicitation" as that term is understood by the Courts.[3] Ordinances which prohibit "aggressive solicitation"

---

[2]  A well-known bar in the Lincoln Park Mall not far from Plaintiffs' stores.

[3]  A convenient definition of "aggressive solicitation" may be found in the case of Gresham v. Peterson, 225 F.3d 899, 902 (6th Cir. 2000) which sustained an ordinance which prohibited "[f]ollowing behind, ahead or alongside a person who walks away from the panhandler after being solicited" or using "profane or abusive language" so as to cause a pedestrian to be "fearful or feel compelled".

typically state that purpose in the title or in the preamble to an ordinance. Section 74-1 includes no such description of its purpose or limitation on its effect. Plaintiffs alleges the following additional particulars:

a.     The use of the word "accost" in §74-1 does not limit the scope of the Ordinance to aggressive solicitations because the word itself is not so limited. A common definition of the term would encompass a great deal of protected speech (and even expressive conduct): "to approach and speak to; esp. in a bold or forward manner". *See*, "accost", <u>Webster's New World Dictionary</u>, 2d Concise Ed.

b.     The actual language of the Ordinance is: "to accost *or attempt to accost*" (emphasis added). Thus, the scope of the Ordinance is not limited to actual conduct, but would also include thinking about eventually engaging in conduct or standing around with the intent of eventually engaging in conduct.

c.     In actual practice, §74-1 has not been limited to "aggressive solicitation", but applies to any solicitation of a pedestrian. This fact is documented in the citations themselves. For instance, citation CE13009732 was issued to FF Cosmetics for "Actively handing out business cards and soliciting to pedestrians on Lincoln rd and in front of other business with the intention to gain profit." Citation CE13006829 was issued to Brilliance New York based on "employees outside asking pedestrians questions about hair treatment etc. soliciting business."

B.     <u>Plaintiffs allege the following particulars as to Section 46-92</u>:

(1)     The prohibition against leafletting in §46-92(g) is not limited to speech which proposes a commercial transaction, but includes a wide variety of speech which only tangentially references a business. According to the Ordinance, "Commercial handbill means any handbill that conveys any information about any good or service

provided by a business." *See*, §46-92(a)(4). A leaflet that says "Joe's N.Y. Deli opposes abortion" or "PETA urges a boycott against Johnson Animal Laboratories" would both fall within the scope of the Ordinance because they "convey[]… information about … good[s] provided by a business" despite the fact that the messages are entirely political in nature.

50.    Sections 74-1 and §46-92 are not narrowly tailored

A.    <u>Plaintiffs allege the following particulars as to Section 74-1</u>:

(1)    As noted in paragraph 49, §74-1 is not limited to purely commercial speech or to aggressive solicitations.

(2)    As noted in paragraph 49, §74-1 is not limited in scope to certain parts of the City or to certain times; rather it applies to *every* public street or sidewalk at *every* time.

(3)    As noted in paragraph 49, §74-1 is not limited to public property (i.e. public streets), but expressly includes speech which occurs on private property.

A.    <u>Plaintiffs allege the following particulars as to Section 46-92</u>:

(1)    As noted in paragraph 49, the definition of "commercial handbill" is not limited to speech which merely proposes a commercial transaction, but includes a wide variety of other speech, including non-commercial speech, if it in any way references what a business does or sells.

51.    Portions of §74-1 and §46-92 are unconstitutionally vague.

A.    <u>Plaintiffs allege the following particulars as to Section 74-1</u>:

(1)    The Ordinance does not limit its scope to aggressive solicitation or even to actual conduct. Rather the operative language of the Ordinance is "to accost or attempt to accost any pedestrian". The Ordinance does not include a definition of those

terms and there is no dictionary definition or commonly accepted understanding of that it means to "attempt to accost". In practice, the Ordinance has been applied to instances in which an employee or contractor was "[a]ctively handing out business cards and soliciting to pedestrians on Lincoln rd and in front of other business with the intention to gain profit." [Citation CE13009732, issued to FF Cosmetic] and a citation was issued based on "employees outside asking pedestrians questions about hair treatment etc. soliciting business." [Citation CE13006829 issued to Brilliance New York]. Thus, the Ordinance is vague on its face and its actual enforcement shows that officials charged with its enforcement are given unfettered discretion to determine when a citation should be issued.

(2)     The procedures for taking appeals from citations issued in §74-1 are self-contradictory and so uncertain that those contradictions cannot be reconciled. The following analysis shows the several areas of conflict:

a.     Sections 74-1(b)(1) and (b)(2)b state that enforcement of the ordinance is to take place pursuant to the provisions of Chapter 30 of the City's Code of Ordinances. Chapter 30 governs proceedings before a special master, which is consistent with most of the language of §74-1, which expressly refers to a special master.

b.     The conflict arises between those Chapter 30 procedures set forth or adopted by reference in one part of §74-1 and the final clause of that Ordinance - §74-1(c) - which states that: "[t]he procedures for appeal of the notice of violation by administrative hearing shall be as set forth in sections 102-384 and 102-385".

c.     Sections 102-384 and 102-385 envision a hearing before the city manager rather than a special master as called for in §74-1.

Page 19

       d.     Proceedings under §102-384 must be initiated within 10 days of the violation. In contrast, §74-1(b)(1) allows 20 days for a citizen to request a hearing before the special master.

       e.     The provisions for appeal under §74-1(b) and Chapter 30 cannot be reconciled with those of §74-1(c) and §§102-384 and 102-385. Section 74-1(b)(4) states that "Any party aggrieved by the decision of the special master may appeal the decision in accordance with law." Section 30-77 specifies that appeals from the special master are made *as of right* to the circuit court: "An aggrieved party, including the city administration, may appeal a final administrative order of a special master to the circuit court. Such an appeal shall not be a hearing de novo, but shall be limited to, appellate review of the record created before the special master." This language is consistent with and adopts the language of Chapter 162.11, Fla.Stat., which governs code enforcement proceedings generally.

     In contrast, §102-385(c) simply provides that "The city manager's designee's/board of adjustment's findings shall constitute the final administrative action of the city for purposes of judicial review under state law." That language is consistent with review by common law certiorari and not by an appeal as of right like that provided for other code enforcement proceedings.[4]

       f.     Section §102-385(d) provides an automatic stay once judicial relief is sought: "If an applicant/taxee fails to seek timely appellate review of an

---

[4] While the standard of appellate review is similar in both cases, appeals from code enforcement proceedings are initiated by filing a conventional notice of appeal. In contrast, review of quasi-judicial decisions by other local government officials is by petition for writ of common law certiorari.

order of the city manager or his designee/administrative hearing officer/board of adjustment, or to comply timely with such order, the code compliance officer may pursue enforcement procedures as set forth in section 102-377." In contrast, neither §74-1(b) nor §30-77 provide for a stay pending appeal to the circuit court.

       B.    <u>Plaintiffs allege the following particulars as to Section 46-92</u>:

       (1)    The 46-92(a)(3) definition of "handbill" is unconstitutionally vague because it includes an undefined exception for "newspapers":

> Handbill means any handbill, flyer, paper, document, dodger, circular, folder, booklet, letter, card, pamphlet, sheet, poster, sticker, banner, notice or other written, printed or painted matter or object that conveys any information, except that "handbill" shall not include a newspaper or its contents.

The term "newspaper" does not have a specified meaning in terms of the Ordinance or common understanding. For instance, one cannot determine whether "newspapers" include periodicals which publish news such as Time magazine. The exception may or may not include paper printouts of Internet stories or blogs from non-traditional publishers. Because the exception is not limited to products made out of wood pulp, but also includes any "object what conveys information", it may be that the exception includes such items as Kindle e-readers. In the specific context of this case, Plaintiffs cannot tell, based on this definition, whether they can lawfully distribute advertisements for their products so long as the advertisement appears in some kind of newspaper (*i.e.*, as part of its "contents").

       52.    Section 46-92 is unconstitutionally underinclusive because it excludes newspapers from the general ban on leafletting during special events or within 20 feet of a café. *See*, 46-92(a)(3) (definition of "handbill"). There is nothing which physically distinguishes newspapers from any other leaflet, handbill or circular; both have an equal

chance of contributing to litter or annoying patrons. Likewise, there is no lawful basis to distinguish an advertisement printed on paper and distributed to pedestrians from the same advertisement which is printed in a newspaper before it is distributed to pedestrian. However, the Ordinance, on its face, would except one of those publications (the advertisement which forms part of the "content" of a "newspaper") from the fines which otherwise apply to dissemination of handbills.

53.     Section 74-1 violates the Due Process Clause of the Fourteenth Amendment because the procedures for administrative and judicial review of citations issued under that code provision are self-contradictory and fail to provide either a proper hearing or meaningful access to the Courts. The analysis for this irreconcilable conflict is set forth in Paragraph 51-B above, which explanation is incorporated herein by reference.

## DAMAGES AND ATTORNEY'S FEES

54.     Because of the City's actions, Plaintiffs are not able to engage in communications which are protected by the First Amendment, including speech which is not of a purely commercial character. Plaintiffs are completely prohibited from communicating with pedestrians upon the threat of further fines and the loss of their businesses.

55.     Plaintiffs has suffered damages as a direct result of Defendant's ordinances, policies and practices and the unconstitutional enforcement of those ordinances. Plaintiffs' damages consist of infringement upon Plaintiffs' constitutional rights as well as monetary losses. The monetary losses include lost profits and injury to good will.

56.     Unless the ordinances, actions and policies of Defendant are enjoined by this Court, Plaintiffs will continue to face harassment, and the arbitrary closure of its business, thereby infringing Plaintiffs' constitutional rights.

57.     Plaintiffs have suffered irreparable injury and continues to suffer irreparable injury as a result of §76-1 and §46-92 and the enforcement of those Ordinance, and Plaintiffs have no plain, adequate nor complete remedy to protect its constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

58.     Plaintiffs have no adequate remedy at law. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief. In cases involving the loss of First Amendment rights, such as in this case, damages are both inadequate and unascertainable.

59.     The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by actions, such as those of Defendant, which interfere with the public's rights guaranteed under the First Amendment.

60.     A permanent injunction will preserve Plaintiffs' civil rights and avoid the need to award extensive compensatory damages.

61.     Plaintiffs has retained Benjamin, Aaronson, Edinger & Patanzo, P.A. as their attorneys to represent it in this action and has agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## <u>COUNT I</u>
## <u>SECTION 74-1 IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED</u>

62.     Plaintiffs reallege each and every allegation set forth in paragraphs 1

through 28, 31 through 51 and 53 through 61 of this Complaint and incorporates them herein by reference.

63.     This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

64.     Section 74-1 violates the First Amendment on its face for the reasons set forth above. In particular, the Ordinance:

A.     Is content-based and not supported by a compelling governmental interest;

B.     Bans an entire category of pure speech ("solicitation" of pedestrians for commercial purposes);

C.     Does not further any compelling or substantial governmental interest;

D.     Is overbroad; and

E.     Is unconstitutionally vague.

65.     Section 74-1 violates the Due Process Clause of the Fourteenth Amendment on its face because the evident conflicts in the manner in which administrative hearings are conducted and appellate review render such proceedings constitutionally inadequate. Neither Miami Beach nor its citizens can tell what process is due, what deadlines apply or even who conducts the hearings.

66.     Section 74-1 has been unconstitutionally applied against the Plaintiffs.

67.     Plaintiffs' communications do not merely propose a commercial transaction. Instead, Plaintiffs also seek to communicate information concerning personal grooming, beauty tips and skin care which are of value to passersby whether or not they buy a product from the Plaintiffs.

68.     Sections 74-1 has been unconstitutionally applied against Plaintiffs to censor the content of their speech and not merely as a means of regulating conduct such as aggressive solicitation.

69.     In actual practice, §74-1 has not been limited to "aggressive solicitation", but applies to any solicitation of a pedestrian. This fact is documented in the citations themselves. For instance, citation CE13009732 was issued to FF Cosmetics for "Actively handing out business cards and soliciting to pedestrians on Lincoln rd and in front of other business with the intention to gain profit." Citation CE13006829 was issued to Brilliance New York based on "employees outside asking pedestrians questions about hair treatment etc. soliciting business."

70.     Speech of the kind engaged in by Plaintiffs, including that described in Paragraph 69 may not be constitutionally proscribed by the subject Ordinance even if it could be constitutionally applied to aggressive panhandlers or others who physically accost pedestrians.

WHEREFORE, Plaintiffs prays for the following relief:

A.      That this Court take jurisdiction over the parties and this cause;

B.      That this Court enter a judgment declaring Miami Beach §74-1 to unconstitutional on its face, and as applied to Plaintiffs.

C.      That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §74-1 against the Plaintiffs or any other similarly situated businesses;

D.    That this Court enter a judgment for damages sufficient to compensate the Plaintiffs for the unconstitutional fines previously paid as well as for the loss of its business profits and for violation of Plaintiffs' right to freedom of expression.

E.    That this court award Plaintiffs its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988;

F.    That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

## COUNT II
## SECTION 46-92 IS UNCONSTITUTIONAL ON ITS FACE AND AS APPLIED

71.    Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 27, 29 through 41, 45 through 52 and 54 through 61 of this Complaint and incorporates them herein by reference.

72.    This is an action for declaratory relief and injunctive relief brought under this Court's general jurisdiction and pursuant to Title 28, United States Code and 42 U.S.C. §1983.

73.    Section 46-92 violates the First Amendment on its face for the reasons set forth above. In particular, the Ordinance:

A.    Is content-based and not supported by a compelling governmental interest;

B.    Does not further any compelling or substantial governmental interest;

C.    Is overbroad;

D.    Is unconstitutionally vague;

E.    Is unconstitutionally underinclusive.

74.    Section 46-92 has been unconstitutionally applied against the Plaintiffs.

75.     Plaintiffs' communications do not merely propose a commercial transaction. Instead, Plaintiffs also seek to communicate information concerning personal grooming, beauty tips and skin care which are of value to passersby whether or not they buy a product from the Plaintiffs.

76.     Sections 46-92 has been unconstitutionally applied against Plaintiffs to censor the content of their speech and not merely as a means of regulating conduct such as litter or aggressive solicitations.

77.     Speech of the kind engaged in by Plaintiffs, including that described in Paragraph 75 may not be constitutionally proscribed by the subject Ordinance even if it could be constitutionally applied to aggressive panhandlers or others who physically accost pedestrians.

WHEREFORE, Plaintiffs prays for the following relief:

A.     That this Court take jurisdiction over the parties and this cause;

B.     That this Court enter a judgment declaring Miami Beach §46-92 to unconstitutional on its face, and as applied to Plaintiffs.

C.     That this Court enter a permanent injunction forever enjoining Defendant and its various agents and employees, from enforcing §46-92 against the Plaintiffs or any other similarly situated businesses;

D.     That this Court enter a judgment for damages sufficient to compensate the Plaintiffs for the unconstitutional fines previously paid as well as for the loss of its business profits and for violation of Plaintiffs' right to freedom of expression.

E.     That this court award Plaintiffs its recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988;

F.      That this Court award Plaintiffs all other relief in law and in equity to which it may be entitled.

*Respectfully submitted,*

BENJAMIN, AARONSON, EDINGER
& PATANZO, P.A.

___/s/  Daniel R. Aaronson_____          ___/s/  Gary S. Edinger_____
DANIEL R. AARONSON, Esquire                    GARY S. EDINGER, Esquire
Florida Bar No.: 314579                        Florida Bar No. 0606812
1 Financial Plaza #1615                        305 N.E. 1st Street
Ft. Lauderdale, Florida 33394                  Gainesville, Florida 32601
(954) 779-1700 (Fax) (954) 779-1771            (352) 338-4440 (Fax) (352) 337-0696
danaaron@bellsouth.net                         GSEdinger@aol.com

JAMES S. BENJAMIN, Esquire
Florida Bar No.: 293245
1 Financial Plaza #1615
Ft. Lauderdale, Florida 33394
(954) 779-1700  (Fax) (954) 779-1771
sexlaw@bellsouth.net

*Attorneys for Plaintiffs*

## DECLARATIONS

(28 U.S.C. § 1746)

I, MOTI SHENFARBER, do declare as follows:

1.      I am MOTI SHENFARBER.

2.      I am the local Agent and authorized representative of FF COSMETICS FL INC. and TIMELESS COSMETICS FL INC. I am authorized to execute this Declaration on behalf of both of the said Plaintiffs.

3.      I have read the foregoing Complaint, and all of the facts alleged in the Complaint are true and correct.

4.      I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  June 3rd, 2014

_____

MOTI SHENFARBER

I, GUY WEISSMAN, do declare as follows:

1.      I am GUY WEISSMAN.

2.      I am the General Manager and authorized representative of BRILLIANCE NEW YORK, LLC. I am authorized to execute this Declaration on behalf of the said Plaintiff.

3.      I have read the foregoing Complaint, and all of the facts alleged in the Complaint are true and correct.

4.      I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  June 3rd, 2014

_____

GUY WEISSMAN

# EXHIBIT "A"

**ARTICLE I. IN GENERAL** 🔗

Sec. 74-1. Soliciting business in public from pedestrians.

Secs. 74-2—74-35. Reserved.

## Sec. 74-1. Soliciting business in public from pedestrians. 🔗

(a)

*Prohibitions.* It shall be unlawful for any person, while upon any public street or sidewalk or while in any building, doorway, stairway, window or other opening abutting on or adjacent to such street or sidewalk, to accost or attempt to accost any pedestrian on such street or sidewalk for the purpose of soliciting him to purchase any property, real or personal, or any food, beverage or service, or to solicit him to enter any place of business for the purpose of selling to or inducing or attempting to induce such pedestrian to purchase any property, real or personal, or any food, beverage or service.

(b)

*Enforcement; penalties; appeals; unpaid fines to constitute liens.* Enforcement of this section shall be in accordance with the following procedures:

(1)

If a code compliance officer finds a violation of this chapter, the compliance officer shall issue a notice of violation to the violator as provided in chapter 30. The notice shall inform the violator of the nature of the violation, amount of fine for which the violator may be liable, instructions and due date for paying the fine, notice that the violation may be appealed by requesting an administrative hearing within 20 days after service of the notice of violation, and that failure to do so shall constitute an admission of the violation and waiver of the right to a hearing.

(2)

A violator who has been served with a notice of violation shall elect either to:

a.

Pay the civil fine as follows:

(i)

First offense: $50.00;

(ii)

Second offense: $100.00;

(iii)

Third and subsequent offenses: $250.00; or

b.

Request an administrative hearing within 20 days before a special master appointed as provided in article II of chapter 30 to appeal the decision of the code compliance officer which resulted in the issuance of the notice of violation;

c.

The special master shall not have discretion to alter the penalties prescribed in subsection (b)(2)a.

(3)

If the named violator, after notice, fails to pay the civil fine or fails to timely request an administrative hearing before a special master, the special master shall be informed of such failure by report from the code compliance officer. Failure of the named violator to appeal the decision of the code compliance officer within the prescribed time period shall constitute a waiver of the violator's right to administrative hearing before the special master. A waiver of the right to an administrative hearing shall be treated as an admission of the violation and penalties may be assessed accordingly.

(4)

Any party aggrieved by the decision of the special master may appeal the decision in accordance with law.

(5)

The city may institute proceedings in a court of competent jurisdiction to compel payment of civil fines.

(6)

A certified copy of an order imposing a civil fine may be recorded in the public records and thereafter shall constitute a lien upon any other real or personal property owned by the violator and it may be enforced in the same manner as a court judgment by the sheriffs of this state, including levy against the personal property, but shall not be deemed to be a court judgment except for enforcement purposes. After two months from the filing of any such lien which remains unpaid, the city may foreclose or otherwise execute upon the lien.

(c)

*[Procedures for appeals.]* The procedures for appeal of the notice of violation by administrative hearing shall be as set forth in sections 102-384 and 102-385

*(Code 1964, § 25-86.1; Ord. No. 2012-3756, § 2, 4-11-12)*

**Secs. 74-2—74-35. Reserved.**

# EXHIBIT "B"

**Sec. 46-92. Litter; definitions; prohibitions on litter; penalties for litter and commercial handbill violations; commercial handbill regulations, fines, and rebuttable presumptions; seizure and removal of litter by the city; enforcement; appeals; liens.**

(a)

Definitions. The following words, terms and phrases, when used in this article, shall have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning:

(1)

Benefactor means the owner of the business advertised in the commercial handbill whose agent, employee, contractor, promoter, or other representative did or caused the throwing, discarding, placing or depositing.

(2)

Business means any commercial or industrial activity, entity, or event in or for which any goods or services are made, sold or offered for sale or other consideration, pecuniary or otherwise.

(3)

Handbill means any handbill, flyer, paper, document, dodger, circular, folder, booklet, letter, card, pamphlet, sheet, poster, sticker, banner, notice or other written, printed or painted matter or object that conveys any information, except that "handbill" shall not include a newspaper or its contents.

(4)

Commercial handbill means any handbill that conveys any information about any good or service provided by a business.

(5)

Litter means any paper, handbill, commercial handbill, garbage, bottle caps, chewing gum, tobacco products, including, but not limited to, used and unused cigarettes, cigars, pipe or chewing tobacco, styrofoam or plastic products, or other waste, including, but not limited to, tree, plant, and grass cuttings, leaves, or other yard maintenance debris, that has been placed or deposited on a public sidewalk, street, road, avenue, beach, swale, median, building, fence, wall, boardwalk, beachwalk, baywalk, cutwalk, park, or in a gutter, drain, or sewer, or on any other public property, right-of-way or place, or on any object located on public property, or on the kneewall, window ledge or sill of any public or private building, or on a motor vehicle, or on any other type of private real or personal property.

Handbills and commercial handbills attached to a trash receptacle, but not within the trash receptacle in the usual manner, shall also be considered litter.

(6)

*One day* means a 24-hour period from noon to noon.

(7)

*Person, benefactor, or owner* include, within their respective meanings, either an individual or an entity.

(b)

*Litter prohibited.* It shall be unlawful for any person or benefactor to throw, discard, place or deposit, or cause to be thrown, discarded, placed, or deposited, litter in any manner or amount whatsoever in or on any public highway, sidewalk, road, street, alley, thoroughfare, beach, park, baywalk, beachwalk, cutwalk, sidewalk cafe areas, or any other public place, except in containers or areas lawfully provided therefor. It shall be unlawful for any person to throw, discard, place or deposit any garbage, cans, bottles or containers in or on any freshwater lakes, rivers, streams, canals, or tidal or coastal waters within the city. In addition, it shall be unlawful for any person to throw, discard, place or deposit litter in any manner or amount whatsoever on any private real or personal property, including, but not limited to, sidewalk cafe furniture and fixtures, unless prior consent of the owner has been given and unless such litter will not cause a public nuisance or be in violation of any other state or local laws, rules or regulations.

(c)

*Prohibitions on beaches.* It shall be unlawful for any person to carry onto any beach within the city a glass or metal bottle or other glass or metal container. In addition, it shall be unlawful for any person to carry any styrofoam product onto any beach within the city or for any business to provide plastic straws with the service or delivery of any beverage to patrons on the beach.

(d)

*Prohibitions on causing litter in sewers and on public and private property.* It shall be unlawful for any person to use leaf blowers, or any other means, to sweep, cast or throw, or cause to be cast or thrown, or discarded into any of the gutters, drains, sewers, or public rights-of-way within the city, or upon any adjacent public or private real or personal property, any garbage, litter, paper, handbill, trash, tree, plant, or grass cuttings, leaves, yard maintenance debris, or other objects or substances.

(e)

*Garbage container requirements for restaurants.* All restaurants with take-out service shall have up to four garbage containers, as need requires, based on

the determination of the city manager or his designee. The containers shall be located in front of and within 50 feet in each direction of the premises at locations approved by the city manager or his designee. These containers shall be kept in clean and sanitary condition at all times and shall be emptied daily or more frequently if necessary to prevent overflowing. The garbage containers required by this section are in addition to those required by chapter 90 of this Code.

(f)

*Penalties for violations.* The following civil fines shall be imposed for violations of this section except as provided in subsection (h) below:

(1)

First offense: $50.00 fine.

(2)

Second offense: $100.00 fine.

(3)

Third or subsequent offense: $500.00 fine.

In lieu of a fine, the special master may accept voluntary community service removing litter in the city equivalent to one hour of community service for each $5.00 of an imposed fine. If the community service is not completed within six months of an adjudication of guilt, the fine shall be reinstated.

(g)

*Prohibitions on commercial handbill distribution.*

(1)

*Definitions.* The following words, terms and phrases, when used in this section, shall have the meanings ascribed to them in this subsection, except where the context clearly indicates a different meaning:

a.

*Art deco historic district* means that area within the boundaries of the National Register Historic District (the Miami Beach Architectural District) as set forth in appendix A.

b.

*High impact periods* mean those periods of time as annually designated by the city manager during which one or more of the following occur:

(i)

There is a designated major event period;

(ii)

A maintenance of traffic plan is required (e.g., including, but not limited to, street closures, lane closures, shuttle service);

(iii)

Hotel occupancy levels are anticipated to be greater than 75 percent;

(iv)

Mutual aid or other assistance from outside agencies is required to provide for the safety and well-being of residents and visitors to the destination; and

(v)

An event on public property is anticipated to result in more than 25,000 visitors to the destination.

c.

*Right-of-way* means and includes, but is not limited to, any state, county, or city owned public street, sidewalk, street corner, curb, bicycle path, or pedestrian walkway.

(2)

*Art deco historic district during high impact periods.* Commercial handbills shall not be distributed in the art deco historic district during high impact periods on Ocean Drive from 6th through 15th Streets, Washington Avenue from 6th through 17th Streets, Collins Avenue from 6th through 17th Streets, and on any portion of Lincoln Road.

(3)

*Sidewalk cafes.* Commercial handbills shall not be distributed on the right-of-way:

a.

Within 20 feet in any direction from the outside perimeter of any approved sidewalk cafe (as indicated in the approved site plan attached to the city-issued permit); and

b.

On any right-of-way within the approved sidewalk cafe.

(4)

*Beaches.* Commercial handbills shall not be distributed on any city beach east of the dunes.

(h)

*Penalties for commercial handbill violations.* If a violation resulted from the throwing, discarding, placing, or depositing, or causing to be thrown, discarded, placed, or deposited, of commercial handbills as litter in violation

of subsection (b), or resulted from a violation of subsection (g), then the following civil fines shall be imposed. The special master shall not have discretion to alter these prescribed penalties except as to the per handbill fine of $50.00 provided in subsection (f)(1).

(1)

If the offense is the first offense, $100.00 fine, plus $50.00 per handbill for a violation of subsection (b);

(2)

If the offense is the second offense within the preceding 12 months, $500.00 fine, plus $50.00 per handbill for a violation of subsection (b);

(3)

If the offense is the third or subsequent offense within the preceding 12 months, $1,500.00 fine, plus $50.00 per handbill for a violation of subsection (b);

(4)

Notwithstanding subsections (h)(1)—(3), no person or benefactor shall receive more than one offense within any one-day period, however, the $50.00 per handbill fine shall apply to all littered handbills found during that one-day period for a violation of subsection (b).

(i)

*Commercial handbill presumption.* At any prosecution for violation of this section when the litter involved is a commercial handbill, if ten or more commercial handbills advertising the same business are found in plain view as litter under circumstances that make it more likely than not that the commercial handbills were placed there, or caused to be placed there, by an agent, employee, contractor, promoter, or other representative of the business advertised on the face of the commercial handbills, the special master shall apply a rebuttable presumption that the business advertised on the face of the handbills threw, discarded, placed or deposited the commercial handbills as litter.

(j)

*Securing of commercial handbill litter by the city.* If a person is found littering with commercial handbills, the code compliance officer is authorized to seize, for use as evidence in the prosecution of the violator before the special master, all commercial handbills in the possession of the violator.

(k)

*Removal of litter by the city.* The city may cause the removal, at the violator's expense, of all litter distributed or placed in violation of this section.

(l)

*Enforcement by code compliance officers; notice of violation.* If a code compliance officer finds a violation of this article, such code compliance officer shall issue a notice of violation to the violator as provided in chapter 30. The notice shall inform the violator of the nature of the violation, amount of fine for which the violator may be liable, instructions and due date for paying the fine, notice that the violation may be appealed by requesting an administrative hearing within 20 days after service of the notice of violation, and that failure to do so shall constitute an admission of the violations and waiver of the right to a hearing.

(m)

*Rights of violators; payment of fine; right to appeal; failure to pay civil fine or to appeal.*

(1)

A violator who has been served with a notice of violation shall elect either to:

a.

Pay the civil fine in the manner indicated on the notice; or

b.

Request an administrative hearing before a special master appointed by the city commission upon recommendation of the city manager to appeal the decision of the code compliance officer which resulted in the issuance of the notice of violation.

(2)

The procedures for appeal by administrative hearing of the notice of violation shall be as set forth in sections 102-384 and 102-385 of the City Code.

(3)

If the named violator after notice fails to pay the civil fine or fails to timely request an administrative hearing before a special master, the special master shall be informed of such failure by report from the code compliance officer. Failure of the named violator to appeal the decision of the code compliance officer within the prescribed time period shall constitute a waiver of the violator's right to administrative hearing before the special master. A waiver of the right to an administrative hearing shall be treated as an admission of the violation and penalties may be assessed accordingly.

(4)

Any party aggrieved by the decision of the special master may appeal the decision in accordance with law.

(n)

*Recovery of unpaid fines; unpaid fines to constitute a lien; foreclosure.*

(1)

The city may institute proceedings in a court of competent jurisdiction to compel payment of civil fines.

(2)

A certified copy of an order imposing a civil fine may be recorded in the public records and thereafter shall constitute a lien upon any other real or personal property owned by the violator and it may be enforced in the same manner as a court judgment by the sheriffs of this state, including levy against the personal property, but shall not be deemed to be a court judgment except for enforcement purposes. After two months from the filing of any such lien which remains unpaid, the city may foreclose or otherwise execute upon the lien.

(o)

*Planning board authority.* Nothing in this article shall limit or restrict any condition or limitation imposed by the planning board.

(p)

*Injunctive relief.* As an additional means of enforcement, the city may seek injunctive relief and/or follow procedures to revoke a business tax receipt and/or certificate of use as set forth in chapters 14, 18 and 102 of the City Code when there are more than three offenses by the same violator within a calendar year.

*(Code 1964, § 3-7; Ord. No. 94-2913, § 1(3-7), 3-16-94; Ord. No. 2007-3560, § 1, 6-6-07; Ord. No. 2009-3644, § 1, 7-15-09; Ord. No. 2010-3708, § 1, 11-17-10; Ord. No. 2012-3759, § 1, 4-11-12)*

**Cross reference—** *Public property, ch. 82; beaches generally, § 82-436 et seq.*

# COMPOSITE EXHIBIT "C"

CASE #. _____

09-0072

**CITY OF MIAMI BEACH
CODE COMPLIANCE DEPARTMENT**
555 17th Street
Miami Beach, FL 33139
(305) 673-7555 FAX (305) 673-7012

## NOTICE OF CITY CODE VIOLATION AND FINE

SITE ADDRESS: 631 Line PA

VIOLATION ISSUE DATE: 5-27-14   TIME: 12:45 PM

ISSUED TO: Brilliance New York Inc

DAY OF THE WEEK:   SU   M   (T)   W   TH   F   S

INSPECTION OF THE ABOVE PREMISES THIS DATE REVEALED
YOU ARE IN VIOLATION OF SECTION:

102-381(A)4

OF THE MIAMI BEACH CITY CODE BY:

|  | FINE |
|---|---|
| Habitual conduct has | ( )   $25.00 |
| occurred at the licensed | ( )   $50.00 |
| premises that violate | ( )   $75.00 |
| City County or State | ( )   $100.00 |
| Law. | ( )   $150.00 |
| Ref. Host any violating | ( )   $200.00 |
| any ord ananc | ( )   $250.00 |
| Failure to correct this | ( )   $350.00 |
| conduct immediately | ( )   $500.00 |
| will result in a | ( )   $1000.00 |
| hearing before the special | ( ) |
| master to suspend or revoke | |
| your occupational license. | |

TOTAL FINES _____

COMMENTS: _____
_____
_____

_____
CODE COMPLIANCE OFFICER (SIGN)

Hernandez
_____
CODE COMPLIANCE OFFICER (PRINT)

RECEIVED BY (Signature): _____

RECEIVED BY (Print Name): Benjamin _____

DATE: 5-27-2014   TIME: 1:25 PM

**IMPORTANT APPEAL AND ADA INFORMATION ON BACK**

CASE #:_____

09-007

**CITY OF MIAMI BEACH**
**CODE COMPLIANCE DEPARTMENT**
555 17th Street
Miami Beach, FL 33139
(305) 673-7555 FAX (305) 673-7012

**NOTICE OF CITY CODE VIOLATION AND FINE** 25 PM

SITE ADDRESS: _947 Linc Rd_

VIOLATION ISSUE DATE: _5-27-14_ TIME: _10:45 PM_

ISSUED TO: _Timeless Cosmetics FL Inc_

DAY OF THE WEEK: SU M (T) W TH F S

INSPECTION OF THE ABOVE PREMISES THIS DATE REVEALED
YOU ARE IN VIOLATION OF SECTION:

_102-381(A)4_

OF THE MIAMI BEACH CITY CODE BY:

|  | FINE |
|---|---|
| _Habitual conduct has_ ( ) | $25.00 |
| _occurred at the licensed_ ( ) | $50.00 |
| _premises that violate_ ( ) | $75.00 |
| _city county or state_ ( ) | $100.00 |
| _law._ ( ) | $150.00 |
| _per habitual violation_ ( ) | $200.00 |
| _city ordinances_ ( ) | $250.00 |
| _failure to correct this_ ( ) | $350.00 |
| _conduct immediately_ ( ) | $500.00 |
| _will result in a_ ( ) | $1000.00 |
| _hearing before the_ ( ) | |
| _special master to suspend_ | |
| _or revoke your occupational_ | |

TOTAL FINES _license._

COMMENTS:_____

_Trisha Byers_
**CODE COMPLIANCE OFFICER (SIGN)**

_Hernandez / Trisha Byers_
**CODE COMPLIANCE OFFICER (PRINT)**

RECEIVED BY (Signature)_Refused to Sign by-_

RECEIVED BY (Print Name):_____ _No Sign_

DATE:_5-27-14_ TIME:_1:10 PM_

CASE #:_____

09-007

**CITY OF MIAMI BEACH**
**CODE COMPLIANCE DEPARTMENT**
555 17th Street
Miami Beach, FL 33139
(305) 673-7555 FAX (305) 673-7012

**NOTICE OF CITY CODE VIOLATION AND FINE**

SITE ADDRESS:_704 Linc Rd_

VIOLATION ISSUE DATE: _5-27-14_ TIME: _10:45 PM_

ISSUED TO: _FF Cosmetics FL Inc_
_DBA Forever Flawless_
DAY OF THE WEEK: SU M T W TH F S
_Cosmetics_
INSPECTION OF THE ABOVE PREMISES THIS DATE REVEALED
YOU ARE IN VIOLATION OF SECTION:

_102-381(A)4_

OF THE MIAMI BEACH CITY CODE BY:

|  | FINE |
|---|---|
| _Habitual conduct has_ ( ) | $25.00 |
| _occurred at the license_ (X) | $50.00 |
| _premises that violate_ ( ) | $75.00 |
| _city county or state law_ ( ) | $100.00 |
| ( ) | $150.00 |
| _per any law you find_ ( ) | $200.00 |
| _city ordinance_ ( ) | $250.00 |
| ( ) | $350.00 |
| _failure to correct this_ ( ) | $500.00 |
| _conduct immediately_ ( ) | $1000.00 |
| _will result in a hearing_ ( ) | |
| _before the special_ | |
| _master to suspend or revoke_ | |

TOTAL FINES _your occupational license_

COMMENTS:_____

_Byers_
**CODE COMPLIANCE OFFICER (SIGN)**

_Hernandez / Trisha Byers_
**CODE COMPLIANCE OFFICER (PRINT)**

RECEIVED BY (Signature):_Refused to sign-100 S_

RECEIVED BY (Print Name):_____

DATE:_5-27-14_ TIME:_1:5_